UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Volodymyr Kvashuk

    v.                                                  Civil No. 23-cv-007-SE
                                                          Opinion No. 2024 DNH 087

Warden, FCI Berlin

## O R D E R

      Petitioner Volodymyr Kvashuk's amended petition for a writ of habeas corpus, brought under 28 U.S.C. § 2241, asserts two grounds for relief: (1) that the Federal Bureau of Prisons ("BOP") violated his rights by refusing to transfer him to a facility closer to his family; and (2) that the BOP improperly excluded from his First Step Act ("FSA") earned time credit total any of the time he served in BOP facilities after his November 9, 2020 sentencing but before his March 26, 2021 arrival at the Reeves Detention Center ("Reeves"). Before the court are Kvashuk's "Motion Challenging the Implementation of a BOP Policy That Contradicts a Congressional Mandate of First Step Act" (doc. no. 13), concerning his FSA time credit claim; and the respondent FCI Berlin Warden's (Second) Motion for Summary Judgment (doc. no. 23). For the reasons explained more fully below, the court grants the Warden's Rule 56 motion as to the transfer claim, but otherwise denies that motion, and correspondingly grants Kvashuk's cross-motion (doc. no. 13) and amended petition (doc. no. 18), in part, relating to the FSA time credit claim.

## Background

      The following facts are undisputed, except as otherwise indicated. On November 9, 2020, the U.S. District Court for the Western District of Washington imposed upon Kvashuk a sentence of 108 months of imprisonment followed by three years of supervised release. That judgment committed Kvashuk to the custody of the BOP for his term of imprisonment and remanded him to the custody of the U.S. Marshals Service ("USMS") for transport to the BOP. Though Kvashuk remained in USMS

custody at BOP facilities during the intervening months, he did not reach Reeves, the first facility the BOP designated for him to serve his term of imprisonment, until March 26, 2021.

The BOP redesignated and transferred Kvashuk to other BOP facilities after Reeves, including the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"). He was in FCI Berlin when he filed this case. Most recently, the BOP transferred him to FCI Jesup in Georgia.[1] While serving his sentence, Kvashuk earned time credits under the FSA. The BOP calculated Kvashuk's total FSA time credits in February 2024. Using March 26, 2021, as the date Kvashuk began to earn credits, the BOP concluded that he had earned 450 days.

Even though Kvashuk was detained in BOP facilities between November 9, 2020 and March 26, 2021, the BOP did not assign Kvashuk to any programs or productive activities before he arrived at Reeves on March 26, 2021. The BOP considered Kvashuk to be in holdover status and not at his designated facility before that date, and the BOP had not yet fully assessed his risk of recidivism or his criminogenic needs. See Decl. of B. Beegle (Feb. 28, 2024) ¶ 22 (doc. no. 23-2) ("Beegle Decl."). BOP records for the pertinent time period "fail to show [his] participation" in any evidence-based recidivism reduction programs or productive activities. See id. Kvashuk has averred, however, that he "participated in what programming was available" to him in the BOP facilities where he was housed before Reeves. Doc. no. 13, at 1.

While at FCI Berlin and before he filed his amended § 2241 petition, Kvashuk began the process to seek a BOP remedy for his claim that the date of his sentencing (and not the date of his arrival at Reeves) should be the starting point for totaling his FSA time credits. But he abandoned that effort upon receiving notice that the BOP, as a matter of policy, would not use his sentencing date.

---

[1] Kvashuk's current custodian is the FCI Jesup Warden. For the reasons stated in Fox v. Warden, FCI Berlin, No. 21-cv-158-SE, 2022 DNH 051, 2022 WL 1085311, 2022 U.S. Dist. LEXIS 66766 (D.N.H. Apr. 11, 2022), Kvashuk's transfer out of this judicial district has not stripped this court of jurisdiction.

**Habeas Jurisdiction**

Habeas corpus relief pursuant to 28 U.S.C. § 2241 is available if a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This court may adjudicate claims for habeas relief alleging that the BOP has unlawfully failed to calculate sentence credits or has delayed a prisoner's transfer to a community-based custodial setting. See Francis v. Maloney, 798 F.3d 33, 36 (1st Cir. 2015). The petitioner bears the burden of proving that his detention violates his federal rights. See Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

**Summary Judgment Standard**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Bader v. Warden, No. 02-cv-508-JD, 2003 DNH 90, 2003 WL 21228520, at *3, 2003 U.S. Dist. LEXIS 8955, at *8-9 (D.N.H. May 28, 2003) (citations omitted), aff'd, 488 F.3d 483 (1st Cir. 2007); see also Gattineri v. Wynn MA, LLC, 93 F.4th 505, 509 (1st Cir. 2024) (citing Fed. R. Civ. P. 56(a)). A genuine factual dispute exists if "the evidence is such that a reasonable jury could resolve the point in the favor of the non-moving party." Hamdallah v. CPC Carolina PR, LLC, 91 F.4th 1, 16 (1st Cir. 2024) (quotation marks omitted). A material fact is one "that has the potential of affecting the outcome of the case." Id. In making that determination, the court draws all reasonable inferences in favor of the nonmoving party from the properly supported facts in the record. Lech v. von Goeler, 92 F.4th 56, 64 (1st Cir. 2024). Based on that view of the record, the court must determine whether the moving party has shown entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56(a).

**Discussion**

**I.   Claim Regarding Transfer**

The Warden's (second) motion for summary judgment (doc. no. 23), in part, seeks dismissal of the Kvashuk 's claim concerning the BOP's failure to transfer Kvashuk to a facility nearer his family.

The Warden argues that Kvashuk is now incarcerated closer to his family in Georgia and, as a result, his claim is moot. Kvashuk has not objected to that argument or otherwise contended that he is still too far from his family. The court dismisses the claim as moot because there is no further relief the court could grant. The Warden's Rule 56 motion is granted, in part, to the same extent.

## II.   FSA Time Credit Claim[2]

Kvashuk claims that the BOP violated his rights under the FSA by failing to include the FSA time credits he may have earned while in BOP facilities after his sentencing but before his transport to Reeves. The Warden maintains that the BOP did not fail to perform any duty under the FSA. In particular, the Warden highlights some of the terms of the FSA provision entitled, "Prerelease custody or supervised release for risk and needs assessment system participants," 18 U.S.C. § 3624(g), which, the Warden contends, make it clear that prisoners cannot receive any FSA time credits for programs they complete before their arrival at their first BOP-designated facility. See Warden's Mem. ("the eligibility requirement in Section 3624(g) is clear in that an inmate only earns FSA time credits for programming completed under the mandatory risk and needs assessment system"). The Warden contends that the FSA requires the BOP to establish a system that assesses each prisoner's recidivism risk factors and specific criminogenic needs before it assigns that prisoner to programs based on the assessment. Only then can the BOP reward the prisoner with time credits for that programming. Under the BOP's system, the BOP does not completely assess a prisoner's risks and needs until after the prisoner arrives at the first facility the BOP designates for serving the prisoner's sentence. See Beegle

---

[2] Kvashuk did not exhaust his BOP remedies before filing this action. The administrative exhaustion requirement that courts may apply to § 2241 petitions is subject to exceptions, including "where the attempt to exhaust . . . would itself be a patently futile course of action." Williams v. Willis, 765 F. App'x 83, 84 (5th Cir. 2019); see also Ward v. Chavez, 678 F.3d 1042, 1046 (9th Cir. 2012); Huihui v. Derr, No. 22-00541 JAO-RT, 2023 WL 4086073, at *3, 2023 U.S. Dist. LEXIS 106532, at *6 (D. Haw. June 20, 2023) ("pursuit [of an administrative remedy] would be a futile gesture because . . . there is an error in the Respondent's understanding of when Petitioner can begin earning credits" under the FSA). The futility exception similarly applies here to relieve Kvashuk of his obligation to exhaust his time credit claim.

4

Decl. ¶¶ 12-16. Thus, the Warden argues, the BOP cannot assign prisoners to programs prior to that date and inmates cannot earn FSA time credits for program participation prior to that date.

The parties' arguments as to the FSA time credit claim require this court to interpret the pertinent terms of the FSA to determine whether the agency's conduct has conformed with the FSA. See Loper Bright Enterp. v. Raimondo, 144 S. Ct. 2244, 2258, 2273 (2024) ("[t]he interpretation of the meaning of statutes, as applied to justiciable controversies, [is] exclusively a judicial function" (quotation marks and citation omitted)). This court must read the pertinent statutory terms in context, with a view to their place in the overall statutory scheme, giving the terms their plain meaning at the time of the statute's enactment. See United States v. Abbas, 100 F.4th 267, 283 (1st Cir. 2024).

The FSA was enacted in December 2018 "with the purpose of modifying prior sentencing law and expanding vocational training, early-release programs, and other initiatives designed to reduce recidivism." United States v. Venable, 943 F.3d 187, 188 (4th Cir. 2019). The FSA requires the BOP to develop and implement a risk and needs assessment "system" that identifies and tracks each prisoner's risk of recidivism, determines which risk reduction programs and productive activities are appropriate for each prisoner's needs, assigns prisoners to such programs and activities, and then periodically reassesses and reassigns prisoners, as appropriate, "throughout their entire term of incarceration." 18 U.S.C. § 3621(h); see also id. § 3632(a)-(b).

The FSA requires the BOP to provide rewards or incentives for prisoners' successful participation in recidivism risk-reduction programs and productive activities. See id. § 3632(d)(1)-(4). The incentive or reward at issue here is a "time credit" that, when applied, advances by up to one year the date on which the prisoner's court-ordered term of supervised release begins, and accelerates the date on which the prisoner is placed in prerelease custody (that is, in a halfway house or home confinement while still within BOP custody). See id. § 3632(d)(4)(A), (C).

Prisoners cannot earn any FSA time credits for programs completed before their sentence "commences." 18 U.S.C. § 3632(d)(4)(B)(ii); Umejesi v. Warden, No. 22-cv-251-SE, 2023 WL 4101471, at *3, 2023 U.S. Dist. LEXIS 56661, at *6 (D.N.H. Mar. 16, 2023), R&R adopted, 2023 WL 4101455, 2023 U.S. Dist. LEXIS 54587 (D.N.H. Mar. 30, 2023).

> Section 3632(d)(4)(B)(ii) [of the FSA] points to 18 U.S.C. § 3585(a) to provide a definition of when a "sentence commences," for purposes of defining when the prisoner's post-[FSA] enactment completion of a program would not entitle him or her to FSA time credits. Section 3585(a) -- and § 3632(d)(4)(B) by its reference to that statute — specifies "the date the defendant is received in custody awaiting transport to" his initial BOP-designated facility as the date his . . . "sentence to a term of imprisonment commences" for purposes of determining whether he can begin to earn FSA time credits.

Umejesi, 2023 WL 4101471, at *6, 2023 U.S. Dist. LEXIS 56661, at *8-9 (BOP's regulatory definition of when a prisoner's sentence commences – keying that date to prisoner's arrival at his first BOP-designated facility – conflicts with FSA's statutory definition of that term and cannot be used to prevent the prisoner from earning FSA time credits). In addition, FSA time credits are unavailable for any program or activity that does not qualify as either an "evidence-based recidivism reduction program" or a "productive activity" as defined in 18 U.S.C. § 3635, and for programs or activities in which the petitioner did not successfully participate in the post-sentencing time period. See id. §§ 3632(d)(4)(A), (B) & 3635.

There is no provision in the FSA that prevents the BOP and its risk and needs assessment system from awarding FSA time credits for an eligible prisoner's successful participation in any programs or productive activities completed after the prisoner's sentence commences. Rather, the FSA specifically provides that an eligible federal prisoner who completes "evidence-based recidivism reduction programming or productive activities," as defined in 18 U.S.C. § 3635, "shall earn" time credits for successful participation, at the rate prescribed in the statute. Id. § 3632(d)(4)(A). The term, "shall earn," makes it clear that the prisoner's ability to receive such time credits is mandatory. Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46-47 (1st Cir. 2014) ("shall"

is nondiscretionary). That mandatory term finds a meaningful parallel in the first part of that same statutory provision, which mandates that the "system" implemented by the BOP "shall" provide incentives and rewards, including time credits for successful participation. And the definitions of "evidence based recidivism reduction program" and "productive activity" in 18 U.S.C. § 3635 describe such programs and activities without importing any time-related restriction or location-based restraint on a prisoner's ability to earn time credits.

Though this court has in another case previously rejected an argument from the Warden that prisoners cannot earn FSA time credits until they reach their first BOP-designated facility, Umejesi, 2023 WL 4101471, 2023 U.S. Dist. LEXIS 56661, the Warden relies on a different argument and part of the FSA here. Section 3624(g) concerns when and how the BOP must apply FSA earned time credits for eligible prisoners. The precise terms that the Warden considers to be crucial to the argument here are underlined below:

> **(g) Prerelease custody or supervised release for risk and needs assessment system participants.**—
>
> > **(1) Eligible prisoners.**--This subsection applies in the case of a prisoner . . . who--
> >
> > > **(A)** <u>has earned time credits under the risk and needs assessment system [under 18 U.S.C. §§ 3631-3635] (referred to in this subsection as the "System")</u> in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;
> > >
> > > **(B)** has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, <u>during the prisoner's term of imprisonment</u>;
> >
> > . . . .

18 U.S.C. § 3624(g)(1)(A)-(B) (emphasis added).

That language makes clear that time credits must be "earned" under the risk and needs system for a prisoner to satisfy the eligibility requirements set forth in that provision. But it is not at all clear from that statutory provision that no time credits are available for qualifying programs a prisoner like

7

Kvashuk may have completed at any point in the post-sentencing period while detained in BOP facilities before his risks and needs have been fully assessed. Indeed, the BOP policy is to allow prisoners to begin to earn FSA time credits from the moment of their arrival at their designated facility, even if they have not yet completed all of their risk and needs assessments. Beegle Decl. ¶¶ 12-13. Since the system required by the FSA is iterative – prisoners' needs are assessed then reassessed periodically and each assessment or reassessment guides the assignment of new programming throughout the prisoner's term of incarceration – crediting prisoners for their participation in such programming whenever they are in BOP custody, including before their arrival at their first BOP-designated facility, comports with the FSA's purpose of expanding federal prisoners' access to programs that address their criminogenic needs over their term of imprisonment.

Depriving prisoners of earned time credits while they are confined in BOP facilities after their sentencing, even if they have successfully participated in programs in that period, is inconsistent with the one specific provision of the FSA concerning when such credits are "available," 18 U.S.C. § 3632(d)(4)(B) (tying availability to the FSA's enactment and to the date the sentence commences). Given that all "evidence-based recidivism reduction programs" and "productive activities" must be, by definition, designed either to reduce recidivism risks or to maintain low or minimum risks of recidivating, see id. § 3635(3), (5), duly crediting a prisoner's successful participation in such programs and activities throughout the prisoner's term of incarceration is what the FSA requires. See id. § 3621(h)(6).

The Warden argues that it would be difficult for the BOP to assess prisoners in USMS custody, track their progress, and award FSA time credits for programs they complete before their arrival at their designated facilities, as prisoners in USMS custody may be housed in non-BOP facilities. This case, however, concerns a prisoner who spent the entire post-sentencing period in BOP facilities. The BOP has filed exhibits here regarding Kvashuk's program participation (or lack thereof) and the partial

8

assessment of his needs which he completed before his Reeves arrival. See Beegle Decl. ¶ 23 & n.4. The Warden's ability to file such records here belies the argument about any practical problems as applied to Kvashuk's case.

There is also an element of circularity in the Warden's arguments about what the BOP perceives the FSA requires the "system" to do, and what the BOP's system actually does, which further undermines the force of the Warden's arguments. See Borker v. Bowers, No. CV 24-10045-LTS, 2024 WL 2186742, at *2, 2024 U.S. Dist. LEXIS 88869, at *3 (D. Mass. May 15, 2024) ("In other words, [petitioner] could not earn credit until he was assessed, and he was not assessed until he was transferred, because the BOP (wrongly, by regulation and policy) treated that event as the one triggering eligibility under the FSA."), appeal filed, No. 24-1648 (1st Cir. July 16, 2024). It is true that the FSA requires the BOP to establish an iterative system for assessing risks and assigning programs. But contrary to the Warden's arguments, "the statutory scheme setting up the risk and needs assessment system does not require that the BOP first assess an inmate and assign programming before crediting an inmate's successfully-completed programs." Mohammed v. Stover, No. 3:23-CV-757 (SVN), 2024 WL 1769307, at *4, 2024 U.S. Dist. LEXIS 73508, at *12-13 (D. Conn. Apr. 23, 2024).

The critical question here is whether Kvashuk in fact completed or "successfully participated" in any qualified programs or productive activities in the relevant time period from November 9, 2020 through March 26, 2021. See Stevens v. Jacquez, No. 3:23-cv-01482-AA, 2024 WL 3200546, at *4-5, 2024 U.S. Dist. LEXIS 113382, at *8-12 (D. Or. June 25, 2024) (prisoner who had not participated in any qualified programs or activities before his arrival at designated facility was not entitled to any FSA time credits in that period); Smith v. Stover, No. 3:23-cv-01645 (JAM), 2024 WL 3279014, at *1-2, 2024 U.S. Dist. LEXIS 108856, at *3-4 (D. Conn. June 20, 2024) (declining to decide whether FSA allowed credit for any post-sentencing programming without evidence that prisoner took part in such programming prior to his arrival at designated facility). This court's record on that issue is not clear,

9

and it is further clouded by BOP policies which allow credits for time periods when the prisoner is not actively participating in programming, including when prisoners are on waitlists, see Beegle Decl. ¶ 10 n.2, "during 'temporary operational and programmatic interruptions' in programming," and "while they are in administrative segregation for reasons unrelated to a disciplinary violation (i.e., for the individual's safety, etc.)," Patel v. Birkholz, No. 2:23-CV-06291-SSS-BFM, 2024 WL 4112432, at *3 n.2, 2024 U.S. Dist. LEXIS 160948, at *8 n.2 (C.D. Cal. May 20, 2024) (citations omitted), R&R adopted sub. nom., Mahendra Patel v. Burkholz, 2024 WL 4113529, 2024 U.S. Dist. LEXIS 159616 (C.D. Cal. Sept. 5, 2024); see also BOP Program Statement 5210.01 at 3-4 (doc. no. 23-6, at 8).

Material facts are in dispute as to whether any programs at all were made available to Kvashuk, whether he might have been waitlisted at any time, and, if so, whether those programs were the type that could have yielded time credits if not for the BOP's failure to include that time period in calculating his credits. Upon the record before this court, the Warden has not demonstrated an entitlement to judgment as a matter of law on Kvashuk's time credit claim. Cf. Pelullo v. Warden, FCC Coleman - Low, No. 5:23-cv-189-WFJ-PRL, 2024 WL 3771691, at *4-5, 2024 U.S. Dist. LEXIS 143499, at *10-14 (M.D. Fla. Aug. 13, 2024) (BOP could not categorically exclude from FSA time credit calculations any programming petitioner actually completed while temporarily transferred to non-designated BOP facilities on USMS writ). The court thus denies the Warden's Rule 56 motion in pertinent part relating to the time credit claim.

The court also grants Kvashuk's "Motion Challenging the Implementation of a BOP Policy That Contradicts a Congressional Mandate of First Step Act" (doc. no. 13) and Kvashuk's amended petition (doc. no. 18), in part. The court directs the BOP to recalculate Kvashuk's FSA earned time credits, beginning on the date of his sentencing, allowing the BOP in the first instance to decide whether any additional FSA earned time credits are due.

## Conclusion

For the foregoing reasons, the court directs as follows:

     1.    The Warden's (second) motion for summary judgment (doc. no. 23) is GRANTED IN PART, in that the court dismisses as moot petitioner's claim seeking an order requiring the BOP to transfer him closer to his family. The Warden's (second) motion for summary judgment is OTHERWISE DENIED.

     2.    The petitioner's motion regarding his FSA time credits (doc. no. 13), is GRANTED, and the petitioner's amended § 2241 petition is GRANTED, IN PART, to the same extent.

     3.    The respondent is directed to recalculate Kvashuk's FSA earned time credit total, using November 9, 2020 as the date he was first eligible to earn FSA time credits. Kvashuk's motion (doc. no. 13) and his amended petition (doc. no. 18) are OTHERWISE DENIED.

     4.    The Warden must file a notice within thirty days of the date of this Order, showing how many FSA time credits the petitioner earned from November 9, 2020 through March 26, 2021; explaining how those credits were calculated; and confirming that such credits are now included in the total amount of FSA time credits calculated for the petitioner.

     5.    The petitioner may file a response, if any, to the Warden's notice no later than thirty days after the Warden's notice is filed. If the petitioner does not respond within that time limit, the failure to respond may be deemed a waiver of any objection to the Warden's notice.

     6.    The court may extend any deadline in this Order upon a motion filed by any party before that deadline expires.

     7.    After receipt of the parties' responses or the expiration of the deadlines for those responses, this court may issue a procedural Order concerning the issues remaining in this case, or directing that judgment be entered and this case be closed, as appropriate.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

September 30, 2024

cc:    Volodymyr Kvashuk, pro se
       Heather A Cherniske, Esq.